IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEN KINNEY,<br>on behalf of Plaintiff and the class<br>members described below,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>AMAZON.COM, INC.; and<br>AMAZON.COM SERVICES LLC;<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　1:23-cv-02523<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT – CLASS ACTION

　　1.　　Plaintiff brings this action to secure redress for false price advertising offered to Amazon Prime customers, who pay monthly for benefits including access to discounted prices.

## JURISDICTION AND VENUE

　　2.　　The Court has subject matter jurisdiction under 28 U.S.C. §1332(d).

　　3.　　Defendants are of diverse citizenship to most of the class members.

　　4.　　The amount in controversy exceeds $5 million, exclusive of interest and costs.

　　5.　　There are more than 100 class members.

　　6.　　The Court has personal jurisdiction and venue because Defendants seek to do business with Illinois customers such as Plaintiff.

## PARTIES

　　7.　　Plaintiff is a resident of Chicago, Illinois.

　　8.　　Defendant Amazon.com, Inc., is a Delaware corporation with its principal office at 410 Terry Avenue N., Seattle, WA 98109-5210. Its registered agent and office is Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, WA 98501.

　　9.　　Defendant Amazon.com, Inc., operates the Amazon.com website.

　　10.　　Defendant Amazon.com Services LLC is a limited liability company organized under

1

the law of Delaware with its principal offices at 410 Terry Avenue N., Seattle, WA 98109-5210. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. On information and belief, its sole manager is a resident of Washington state. On information and belief, it is responsible for the customer fulfillment and customer service operations of Amazon.com.

## FACTS

11. Plaintiff subscribed to the Amazon Prime service, paying a monthly fee for that purpose.

12. Amazon Prime is a paid subscription service from Amazon which gives users access to additional services otherwise unavailable or available only at a premium to other Amazon customers.

13. One of the services claimed to be provided is special price reductions, "Prime Exclusive Savings for You." These are part of the services that Amazon Prime customers pay for.

14. Specifically, Amazon offers persons who are signing up for Amazon Prime: "Shopping Benefits" "Prime Exclusive Deals: Enjoy deals every day on thousands of items available only to Prime members." https://www.amazon.com/b/?node=23945845011
Those exclusive deals include highly promoted special sale days, including Early Access Sale and Amazon Prime Days.

15. Amazon described its 2022 Early Access Sale as offering "Two days of epic deals" exclusively for Prime members. Exhibit A.
https://www.amazon.com/gp/help/customer/display.html?nodeId=TSjVCv9PmpJsKI1j2M

16. Plaintiff saw the statements regarding special price reductions and sales days for Prime Members before signing up and relied on them in agreeing to pay to join Prime.

17. One accepts the offer of Amazon Prime benefits by signing up (electronically) and paying the fee (currently $14.99 /month or $139 / year).

18. Prior to October 2022, Plaintiff signed up and paid the fee.

19. The Federal Trade Commission states as follows (16 C.F.R. part 233) with respect to advertising of savings, bargains, discounts and price reductions:

**§ 233.1 Former price comparisons**.

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level - $7.50 - and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater,

3

and not merely nominal, reduction was being offered. [Guide I]

**§ 233.2 Retail price comparisons; comparable value comparisons.**

(a) Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving. Expressed another way, if a number of the principal retail outlets in the area are regularly selling Brand X fountain pens at $10, it is not dishonest for retailer Doe to advertise: "Brand X Pens, Price Elsewhere $10, Our Price $7.50".

(b) The following example, however, illustrates a misleading use of this advertising technique. Retailer Doe advertises Brand X pens as having a "Retail Value $15.00, My Price $7.50," when the fact is that only a few small suburban outlets in the area charge $15. All of the larger outlets located in and around the main shopping areas charge $7.50, or slightly more or less. The advertisement here would be deceptive, since the price charged by the small suburban outlets would have no real significance to Doe's customers, to whom the advertisement of "Retail Value $15.00" would suggest a prevailing, and not merely an isolated and unrepresentative, price in the area in which they shop.

(c) A closely related form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality - in other words, comparable or competing merchandise - to that being advertised. Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive. [Guide II]

**§ 233.3 Advertising retail prices which have been established or suggested by manufacturers (or other nonretail distributors).**

(a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.

(b) There are many methods by which manufacturers' suggested retail or list prices are advertised: Large scale (often nationwide) mass-media advertising by the manufacturer

4

himself; preticketing by the manufacturer; direct mail advertising; distribution of promotional material or price lists designed for display to the public. The mechanics used are not of the essence. This part is concerned with any means employed for placing such prices before the consuming public.

(c) There would be little problem of deception in this area if all products were invariably sold at the retail price set by the manufacturer. However, the widespread failure to observe manufacturers' suggested or list prices, and the advent of retail discounting on a wide scale, have seriously undermined the dependability of list prices as indicators of the exact prices at which articles are in fact generally sold at retail. Changing competitive conditions have created a more acute problem of deception than may have existed previously. Today, only in the rare case are all sales of an article at the manufacturer's suggested retail or list price.

(d) But this does not mean that all list prices are fictitious and all offers of reductions from list, therefore, deceptive. Typically, a list price is a price at which articles are sold, if not everywhere, then at least in the principal retail outlets which do not conduct their business on a discount basis. It will not be deemed fictitious if it is the price at which substantial (that is, not isolated or insignificant) sales are made in the advertiser's trade area (the area in which he does business). Conversely, if the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price.

(e) This general principle applies whether the advertiser is a national or regional manufacturer (or other non-retail distributor), a mail-order or catalog distributor who deals directly with the consuming public, or a local retailer. But certain differences in the responsibility of these various types of businessmen should be noted. A retailer competing in a local area has at least a general knowledge of the prices being charged in his area. Therefore, before advertising a manufacturer's list price as a basis for comparison with his own lower price, the retailer should ascertain whether the list price is in fact the price regularly charged by principal outlets in his area.

(f) In other words, a retailer who advertises a manufacturer's or distributor's suggested retail price should be careful to avoid creating a false impression that he is offering a reduction from the price at which the product is generally sold in his trade area. If a number of the principal retail outlets in the area are regularly engaged in making sales at the manufacturer's suggested price, that price may be used in advertising by one who is selling at a lower price. If, however, the list price is being followed only by, for example, small suburban stores, house-to-house canvassers, and credit houses, accounting for only an insubstantial volume of sales in the area, advertising of the list price would be deceptive.

(g) On the other hand, a manufacturer or other distributor who does business on a large regional or national scale cannot be required to police or investigate in detail the prevailing prices of his articles throughout so large a trade area. If he advertises or disseminates a list or preticketed price in good faith (i.e., as an honest estimate of the actual retail price) which does not appreciably exceed the highest price at which substantial sales are made in his trade area, he will not be chargeable with having engaged in a deceptive practice. Consider the following example:

(h) Manufacturer Roe, who makes Brand X pens and sells them throughout the United States, advertises his pen in a national magazine as having a "Suggested Retail Price $10," a price determined on the basis of a market survey. In a substantial number of representative communities, the principal retail outlets are selling the product at this price in the regular

5

course of business and in substantial volume. Roe would not be considered to have advertised a fictitious "suggested retail price." If retailer Doe does business in one of these communities, he would not be guilty of a deceptive practice by advertising, "Brand X Pens, Manufacturer's Suggested Retail Price, $10, Our Price, $7.50."

(i) It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions. [Guide III]

20. Under the FTC Guides, the number of sales at the "comparison" price must be more than nominal.

21. Most businesses adhere to the FTC Guides.

22. Because most businesses adhere to the FTC Guides, consumers expect that representations of savings, bargains, discounts and price reductions are honest and will conform to the rules in the FTC Guides, whether they know of the Guides or not.

23. Plaintiff relied on the fact that Amazon Prime offered genuine price reductions in subscribing to and paying for Amazon Prime.

24. In October 2022, Plaintiff saw an LG Television that was included in the Early Access Day sale. Plaintiff purchased the LG television advertised by Amazon, in reliance on Amazon's advertising regarding the pricing of the television.

25. Amazon advertised the television as $1,496.99, marked down from $2,499.99. A copy of the advertisement is attached as Exhibit B. The advertisement claims the television is "40% off." Amazon included a countdown timer in connection with the sale, attempting to create a sense of urgency about the need to purchase the TV quickly in order to obtain such a large alleged discount.

26. Amazon never in fact sold the TV for $2,499.99 at all between June 2021 and September 2022. Between May and Sept. 2022, it was mostly listing for under $1,600, when it jumped up to $2,100, just before the sale. (Exhibit D)

27. When Plaintiff purchased the television, the list price displayed changed to $2,199,

6

the 40% off disappeared, and the deal claimed it was "$700 off." The deal was also called a "Lightning Deal" in order to create a sense of urgency to follow through with the purchase quickly or risk losing the "Lightning Deal." The total before tax price remained $1,496.99. (Exhibit C). Given the prior price history of the TV, Plaintiff's savings was in fact only around $100, not the $700 or 40% advertised.

28. Plaintiff relied on Exhibits A-C in purchasing the television from Amazon instead of elsewhere.

29. Plaintiff believed that he was being offered a genuine substantial price reduction from Amazon's own price, and would not have bought the TV at that time had it not been for the promises of 40% savings.

30. In fact, as shown on Exhibit D, Amazon increased the price of the TV just before the sale by approximately $600, and then advertised it to Prime customers as 40% off the recently inflated price.

31. Plaintiff was not aware of the third party website, camelcamelcamel.com, which provided Exhibit D - the Amazon Price Chart -- until after he purchased the television. The average Prime member is not likely aware of the website's existence. Plaintiff only located it after learning a friend had purchased the same make and model television a few months earlier at the same price, which made him question whether the "discount" he received was real.

32. This practice is misleading and deceptive under the FTC Guides, which states: "To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer." 16 C.F.R. part 233.3(a).

33. Plaintiff was unaware of this when he purchased the television.

34. Amazon describes a "strike-through price," such as that in Exhibit B, as follows in a "Help & Customer Service" screen:

Strike-Through Pricing and Savings

7

> Items on Amazon may display a List Price, Was Price, or other strike-through pricing or saving information on the product detail page.
>
> The List Price is the suggested retail price of a new product as provided by a manufacturer, supplier, or seller. Except for books, Amazon will only display a List Price if the product was purchased by customers on Amazon or offered by other retailers at or above the List Price in the past 90 days for non-seasonal products (like TVs and Headphones) and in the past 180 days for seasonal products (like ski jackets and shoes). List prices may not necessarily reflect the prevailing market price of a product.
>
> The Was Price is determined using the 90-day median price paid by customers for the product on Amazon. We exclude prices paid by customers for the product during a limited time deal. For Amazon Fresh offers, the Was Price is calculated as the median price offered locally in the last 35 days, excluding promoted prices.
>
> The New price refers to the current Featured Offer price for a NEW version of the item. You may see this displayed as a strike-through price used for offers.
>
> You may see additional strike-through pricing and savings information:
>
> Based on savings from the "List" or "Was" price, items may also have a You Save dollar value and percentage-off display.
>
> Lowest Price in 30 Days or Best Price in 30 Days means that the current price is lower than, or equal to, the lowest featured offer price for this item sold on Amazon in the past 30 days.
> . . .

(https://www.amazon.com/gp/help/customer/display.html?nodeId=GQ6B6RH72AX8D2TD)

35. Amazon has no requirement for any minimum number of sales before displaying a "strike-through price."

36. Amazon's criteria for displaying a "strike-through price" are thus materially different from, and less stringent than, the requirements of the FTC Guides for advertising savings, bargains, discounts and price reductions. Amazon's description of its pricing also fails to disclose the methodology it uses to derive the strike through prices.

37. Amazon has been previously sued for deceptive practices with respect to reference prices. (Exhibit E). In a case filed in 2021, the State of California alleged that Amazon used advertisements containing "reference pricing: that is, the price for which a product is advertised by Defendant for purchase is compared to a higher former price at which the product was sold by Defendant previously...." (Exhibit E, Par. 5) "A material number of Defendant's advertised reference prices were either misleading or had the tendency and capacity to mislead.... as follows: a.

8

In the case of some advertised reference prices that referred to a former price at which the product was available for sale by Defendant, there were insufficient temporal constrains and/or number of sales to support the reference price as a former price, and there was insufficient disclosure to the consumer of the methodology used to derive the former price. b. In the case of some advertised reference prices that suggested the price at which the product is or was regularly sold by another seller, supplier or the product's manufacturer, Defendant insufficiently disclosed that the reference price was not necessarily the prevailing market price or regular price for which the product could be purchased."

38. Amazon's description of a "strike-through price" on its "Help & Customer Service" screen is not linked to or referenced in the display of the supposed bargain price. (Exhibits B and C).

39. Because of this, consumers are unlikely to reference the "Help & Customer Service" screen when purchasing a product, especially given the fact that consumers can and normally do add the product to the shopping cart directly from the screen displaying the supposed bargain price.

40. Amazon's description of a "strike-through price" on its "Help & Customer Service" screen is also not conspicuous when consumers sign up for Amazon Prime.

41. Because of this, consumers are unlikely to reference the "Help & Customer Service" screen when signing up for Amazon Prime.

42. Consumers are therefore likely to believe that the price reductions claimed by Amazon are true, are based on Amazon's own actual prices (as opposed to a price offered by any other retailer in the last 90 days), and conform to the general practices regarding the advertising of savings, bargains, discounts and price reductions, in the FTC Guides.

43. Plaintiff did not notice the discrepancy between the FTC Guides and Amazon's definition of price reductions until after he signed up for Amazon Prime and after the purchase of the television.

44. The consequences of the fictitious price reductions include that Amazon Prime

subscribers such as Plaintiff do not receive the benefits for which they pay Amazon Prime fees, causing them economic injury.

45. Amazon Prime customers including Plaintiff also do not receive the benefit of their bargain, i.e., genuine price reductions comparable to those offered by most businesses, who comply with the FTC Guides.

46. At various times between October 2022 and the present, the television was available from Amazon and other sellers for less than Plaintiff paid Amazon for it. Amazon has sold it for as low as $1,196.99 during such period. BestBuy has sold it for $1,209.99.

47. The use of countdown timers is a sophisticated design practice which can trick and trap consumers. In the September 2022 FTC staff report (Exhibit F), *Bringing Dark Patterns to Light,* the FTC included "baseless countdown timer" in its compilation of digital dark pattern variants, stating a fake countdown clock creates pressure to buy immediately, when the clock actually "just goes away or resets when it times out." (Exhibit F, pgs. 20 and 29 of 48).

48. The purpose and effect of Amazon's advertising practices is to convey to consumers that they are getting a substantial and unusual time sensitive discount and should not look elsewhere or wait for a better price. This causes consumers such as Plaintiff to rush to buy a product he or she would not have purchased otherwise, or to overpay.

49. But for Amazon's improper advertising practices, Plaintiff would not have purchased the television from Amazon, or would have shopped around and paid less for the same television elsewhere.

50. The FTC recently sued Amazon for deceptive practices in connection with its Amazon Prime memberships.
https://www.ftc.gov/news-events/news/press-releases/2023/06/ftc-takes-action-against-amazon-enrolling-consumers-amazon-prime-without-consent-sabotaging-their

## COUNT I – BREACH OF CONTRACT

51. Plaintiff incorporates paragraphs 1-50.

52. Amazon breached its promise of "Prime Exclusive Savings for You" when it provided purported "savings" that did not conform to the FTC Guides. Specifically, Amazon promised to sell the TV to Plaintiff at a 40% discount, or $700 savings, when in fact the price he was charged was not more than a $100 savings.

53. Amazon breached its promise of providing substantial savings to Prime Members at its Early Access Sale by fictitiously increasing the price of the products just before the sale, and then falsely claiming they were being offered at a discount.

54. "In the absence of language to the contrary, the laws and statutes pertinent to a contract and in force at the time the contract is executed are considered a part of that contract as though they were expressly incorporated therein." *Brandt v. Time Ins. Co.,* 302 Ill. App. 3d 159, 169, 704 N.E.2d 843, 850 (1st Dist. 1998).

## CLASS ALLEGATIONS

55. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

56. The class consists of (a) all individuals (b) who purchased goods on Amazon Prime (c) with a price of $500 or more (c) at a price which Amazon represented to involve savings compared to a comparison price (d) not maintained by Amazon at least 50% of the past six months and (e) the purchase was made within five years prior to the filing of this action.

57. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

58. On information and belief, there are more than 100 class members, and the class is so numerous that joinder of all members is not practicable.

59. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether Amazon engages in false price advertising;

11

    b.  Whether this violates the contract with Amazon Prime customers.

  60.  Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

  61.  Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

  62.  A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.  Individual actions are not economically feasible.

    b.  Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.  Appropriate compensatory damages;

    ii.  Costs of suit;

    iii.  Such other and further relief as the Court deems proper.

## COUNT II – DECEPTIVE PRACTICES

  63.  Plaintiff incorporates paragraphs 1-50.

  64.  Defendants engage in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, when they (a) promise "Exclusive deals A wide selection of savings" to Amazon Prime customers and (b) then sell goods to Prime customers at fictitious sale prices, using devices such as artificially inflated "strike through" and "list" prices.

  65.  Defendants engage in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by using devices such as countdown timers in order to create a false sense of urgency which pressures consumers into purchasing a product immediately, or one they would not otherwise purchase at all.

  66.  Amazon engages in unfair and deceptive practices by inflating the prices of merchandise prior to sales events, and then claiming the prices are more substantially discounted than they really are in comparison to recent prices.

67. 815 ILCS 505/2 provides:

> Sec. 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

68. Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, provides:

> Sec. 2. Deceptive trade practices.
>
> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: . . .
>
> (11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding. . . .

## CLASS ALLEGATIONS

69. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

70. The class consists of (a) all individuals with Illinois addresses (b) who purchased goods on Amazon Prime (c) with a price of $500 or more (c) at a price which Amazon represented to involve savings compared to a comparison price (d) not maintained by Amazon at least 50% of the past six months and (e) the purchase was made within three years prior to the filing of this action.

71. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

72. On information and belief, there are more than 100 class members, and the class is so numerous that joinder of all members is not practicable.

13

73. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether Amazon engages in false price advertising;

    b. Whether this is a deceptive practice.

74. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

75. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

76. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Appropriate compensatory damages;

    ii. Punitive damages;

    iii. Attorney's fees, litigation expenses and costs of suit;

    iv. Such other and further relief as the Court deems proper.

### COUNT III – DECEPTIVE PRACTICES

77. Plaintiff incorporates paragraphs 1-50.

78. Defendants' terms of service incorporate Washington state law.

79. Rev. Code Wash. §19.86.020 provides that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

80. Defendants engage in unfair methods of competition and unfair or deceptive acts or practices when they (a) promise "Exclusive deals A wide selection of savings" to Amazon Prime

customers and (b) then sell goods to Prime customers at fictitious sale prices, using devices such as artificially inflated "strike through" and "list" prices.

81. Defendants engage in unfair methods of competition and unfair or deceptive acts or practices by using devices such as countdown timers in order to create a false sense of urgency which pressures consumers into purchasing a product immediately, or one they would not otherwise purchase at all.

82. Amazon engages in unfair and deceptive practices by inflating the prices of merchandise prior to sales events, and then claiming the prices are more substantially discounted than they really are in comparison to recent prices.

83. Rev. Code Wash. §19.86.090 provides that "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee. In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars . . . ."

84. Rev. Code Wash. § 19.86.093 provides that "In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it: (1) Violates a statute that incorporates this chapter; (2) Violates a statute that contains a specific legislative declaration of public interest impact; or (3) (a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons."

85. Rev. Code Wash. 19.86.120 provides that "Any action to enforce a claim for damages under RCW 19.86.090 shall be forever barred unless commenced within four years after the cause of action accrues . . . ."

15

**CLASS ALLEGATIONS**

86. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

87. The class consists of (a) all individuals (b) who purchased goods on Amazon Prime (c) with a price of $500 or more (c) at a price which Amazon represented to involve savings compared to a comparison price (d) not maintained by Amazon at least 50% of the past six months and (e) the purchase was made within four years prior to the filing of this action.

88. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

89. On information and belief, there are more than 100 class members, and the class is so numerous that joinder of all members is not practicable.

90. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

   a. Whether Amazon engages in false price advertising;

   b. Whether this is a deceptive practice.

91. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

92. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

93. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.      Compensatory damages;

      ii.     Treble damages;

      iii.    Attorney's fees, litigation expenses and costs of suit;

      iv.    Such other and further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Cassandra P. Miller (ARDC 6290238)
Carly M. Roman (ARDC 6334371)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                        */s/ Daniel A. Edelman*
                                        Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman