IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEN KINNEY,<br>on behalf of Plaintiff and the class<br>members described below,<br><br>    Plaintiff,<br><br>  vs.<br><br>AMAZON.COM, INC.; and<br>AMAZON.COM SERVICES LLC;<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) 1:23-cv-02523<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Cassandra P. Miller (ARDC 6290238)
Carly M. Roman (ARDC 6334371)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

I.     INTRODUCTION

Defendants ("Amazon") completely misrepresent the nature of the case in an attempt to shoehorn it into caselaw that does not fit the allegations actually made by Plaintiff in his Amended Complaint (Dkt. #22, "AC").  The cases Amazon relies upon hold that it is difficult to show pecuniary loss where a seller advertises that his goods are available at a bargain price, when they are not.  The only harm to the consumer is that he may have gone to the trouble of visiting the seller, physically or electronically, and his expectations are disappointed.

Here, Plaintiff alleges that Amazon charges and collects money from consumers in exchange for the opportunity to receive future bargains, but does not provide what it represents.  In this case, it is obvious that the consumer suffers pecuniary harm.  He pays for something, but does not receive it.  He suffers both direct out of pocket loss and consequential damages.

Amazon's other arguments also lack merit.

II.    STATEMENT OF FACTS

Defendant Amazon.com, Inc., operates the Amazon.com website. (AC, ¶9)  Defendant Amazon.com Services LLC is responsible for the customer fulfillment and customer service operations of Amazon.com. (AC, ¶10)

Plaintiff subscribed to the Amazon Prime service, paying a monthly fee for that purpose. (AC, ¶11)  Amazon Prime is a paid subscription service from Amazon which gives users access to additional services otherwise unavailable or available only at a premium to other Amazon customers. (AC, ¶12)

One of the services claimed to be provided is special price reductions, "Prime Exclusive Savings for You."  These are part of the services that Amazon Prime customers pay for. (AC, ¶13) Specifically, Amazon offers persons who are signing up for Amazon Prime: "Shopping Benefits" "Prime Exclusive Deals:  Enjoy deals every day on thousands of items available only to Prime members."  Those exclusive deals include highly promoted special sale days, including Early Access

Sale and Amazon Prime Days. (AC, ¶14) Amazon described its 2022 Early Access Sale as offering "Two days of epic deals" exclusively for Prime members. (AC, ¶15 and Ex. A)

Plaintiff saw the statements regarding special price reductions and sales days for Prime Members before signing up and relied on them in agreeing to pay to join Prime. (AC, ¶16) One accepts the offer of Amazon Prime benefits by signing up (electronically) and paying the fee (currently $14.99 /month or $139 / year). (AC, ¶17) Plaintiff did this. (AC, ¶18)

The Federal Trade Commission has published guidelines in 16 C.F.R. part 233 with respect to advertising of savings, bargains, discounts and price reductions. (AC, ¶19) Under the FTC Guides, the number of sales at the "comparison" price must be more than nominal. (AC, ¶20)

Most businesses adhere to the FTC Guides. (AC, ¶21) As a result, consumers expect that representations of savings, bargains, discounts and price reductions are honest and will conform to the rules in the FTC Guides, whether they know of the Guides or not. (AC, ¶22) Plaintiff relied on the fact that Amazon Prime offered genuine price reductions in subscribing to and paying for Amazon Prime. (AC, ¶23)

In October 2022, Plaintiff saw an LG Television that was included in the Early Access Day sale. Plaintiff purchased the LG television advertised by Amazon, in reliance on Amazon's advertising regarding the pricing of the television. (AC, ¶24)

Amazon advertised the television as $1,496.99, marked down from $2,499.99. The advertisement claims the television is "40% off." Amazon included a countdown timer in connection with the sale, attempting to create a sense of urgency about the need to purchase the TV quickly in order to obtain such a large alleged discount. (AC, ¶25 and Ex. B)

In fact, Amazon never sold the TV for $2,499.99 at all between June 2021 and September 2022. Between May and September 2022, it was mostly listing for under $1,600, when it jumped up to $2,100, just before the sale. (AC, ¶26 and Ex. D)

When Plaintiff purchased the television, the list price displayed changed to $2,199,

the 40% off disappeared, and the deal claimed it was "$700 off." The deal was also called a "Lightning Deal" in order to create a sense of urgency to follow through with the purchase quickly or risk losing the "Lightning Deal." The total before tax price remained $1,496.99. (AC, ¶27 and Ex. C) Given the prior price history of the TV, Plaintiff's savings was in fact only around $100, not the $700 or 40% advertised. (AC, ¶27)

Plaintiff relied on AC, Exs. A-C in purchasing the television from Amazon instead of elsewhere. (AC, ¶28) Plaintiff believed that he was being offered a genuine substantial price reduction from Amazon's own price, and would not have bought the TV at that time had it not been for the promises of 40% savings. (AC, ¶29) In fact, as shown on AC, Ex. D, Amazon increased the price of the TV just before the sale by approximately $600, and then advertised it to Prime customers as 40% off the recently inflated price. (AC, ¶30)

Plaintiff was not aware of the third party website, camelcamelcamel.com, which provided AC, Ex. D -- the Amazon Price Chart -- until after he purchased the television. The average Prime member is not likely aware of the website's existence. Plaintiff only located it after learning a friend had purchased the same make and model television a few months earlier at the same price, which made him question whether the "discount" he received was real. (AC, ¶31)

Amazon's practice is misleading and deceptive under the FTC Guides, which states: "To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer." 16 C.F.R. part 233.3(a). (AC, ¶32)

Plaintiff was unaware of this when he purchased the television. (AC, ¶33)

Amazon describes a "strike-through price," such as that in AC, Ex. B, as follows in a "Help & Customer Service" screen:

Strike-Through Pricing and Savings

Items on Amazon may display a List Price, Was Price, or other strike-through pricing or saving information on the product detail page.

-3-

> The List Price is the suggested retail price of a new product as provided by a manufacturer, supplier, or seller. Except for books, Amazon will only display a List Price if the product was purchased by customers on Amazon or offered by other retailers at or above the List Price in the past 90 days for non-seasonal products (like TVs and Headphones) and in the past 180 days for seasonal products (like ski jackets and shoes). List prices may not necessarily reflect the prevailing market price of a product.
>
> The Was Price is determined using the 90-day median price paid by customers for the product on Amazon. We exclude prices paid by customers for the product during a limited time deal. For Amazon Fresh offers, the Was Price is calculated as the median price offered locally in the last 35 days, excluding promoted prices.
>
> The New price refers to the current Featured Offer price for a NEW version of the item. You may see this displayed as a strike-through price used for offers.
>
> You may see additional strike-through pricing and savings information:
>
> Based on savings from the "List" or "Was" price, items may also have a You Save dollar value and percentage-off display.
>
> Lowest Price in 30 Days or Best Price in 30 Days means that the current price is lower than, or equal to, the lowest featured offer price for this item sold on Amazon in the past 30 days. . . .   (AC, ¶34)

Amazon has no requirement for any minimum number of sales before displaying a "strike-through price." (AC, ¶35)  Amazon's criteria for displaying a "strike-through price" are thus materially different from, and less stringent than, the requirements of the FTC Guides for advertising savings, bargains, discounts and price reductions.  Amazon's description of its pricing also fails to disclose the methodology it uses to derive the strike through prices. (AC, ¶¶36-37)

Amazon has been previously sued for deceptive practices with respect to reference prices. (AC, Ex. E).  In a 2021 case, the State of California alleged that Amazon used advertisements containing "reference pricing: that is, the price for which a product is advertised by Defendant for purchase is compared to a higher former price at which the product was sold by Defendant previously...." (AC, Ex. E, ¶5)  "A material number of Defendant's advertised reference prices were either misleading or had the tendency and capacity to mislead.... as follows:   a.  In the case of some advertised reference prices that referred to a former price at which the product was available for sale by Defendant, there were insufficient temporal constrains and/or number of sales to support the reference price as a former price, and there was insufficient disclosure to the consumer of the

methodology used to derive the former price. b. In the case of some advertised reference prices that suggested the price at which the product is or was regularly sold by another seller, supplier or the product's manufacturer, Defendant insufficiently disclosed that the reference price was not necessarily the prevailing market price or regular price for which the product could be purchased."

Amazon's description of a "strike-through price" on its "Help & Customer Service" screen is not linked to or referenced in the display of the supposed bargain price. (AC, ¶38) Because of this, consumers are unlikely to reference the "Help & Customer Service" screen when purchasing a product, especially given the fact that consumers can and normally do add the product to the shopping cart directly from the screen displaying the supposed bargain price. (AC, ¶39)

Amazon's description of a "strike-through price" on its "Help & Customer Service" screen is also not conspicuous when consumers sign up for Amazon Prime. (AC, ¶40) Because of this, consumers are unlikely to reference the "Help & Customer Service" screen when signing up for Amazon Prime. (AC, ¶41)

Consumers are therefore likely to believe that the price reductions claimed by Amazon are true, are based on Amazon's own actual prices (as opposed to a price offered by any other retailer in the last 90 days), and conform to the general practices regarding the advertising of savings, bargains, discounts and price reductions, as set forth in the FTC Guides and used by other sellers. (AC, ¶42)

Plaintiff did not notice the discrepancy between the FTC Guides and Amazon's definition of price reductions until after he signed up for Amazon Prime and after the purchase of the television. (AC, ¶43)

The consequences of the fictitious price reductions include that Amazon Prime subscribers such as Plaintiff do not receive the benefits for which they pay Amazon Prime fees, causing them economic injury. (AC, ¶44)

Amazon Prime customers including Plaintiff also do not receive the benefit of their bargain, i.e., genuine price reductions comparable to those offered by most businesses, who comply with the FTC Guides. (AC, ¶45)

At various times between October 2022 and the present, the television was available from Amazon and other sellers for less than Plaintiff paid Amazon for it. Amazon has sold it for as low as $1,196.99 during such period. BestBuy has sold it for $1,209.99. (AC, ¶46)

The use of countdown timers is a sophisticated design practice which can trick and trap consumers. In the September 2022 FTC staff report (AC, Ex. F), *Bringing Dark Patterns to Light,* the FTC included "baseless countdown timer" in its compilation of digital dark pattern variants, stating a fake countdown clock creates pressure to buy immediately, when the clock actually "just goes away or resets when it times out." (AC, Ex. F, pgs. 20 and 29 of 48). (AC, ¶47)

The purpose and effect of Amazon's advertising practices is to convey to consumers that they are getting a substantial and unusual time sensitive discount and should not look elsewhere or wait for a better price. This causes consumers such as Plaintiff to rush to buy a product he or she would not have purchased otherwise, or to overpay. (AC, ¶48)

But for Amazon's improper advertising practices, Plaintiff would not have purchased the television from Amazon, or would have shopped around and paid less for the same television elsewhere. (AC, ¶49)

The FTC recently sued Amazon for deceptive practices in connection with its Amazon Prime memberships. (AC, ¶50)

Based on these facts, Plaintiff alleges breach of contract (Count I), in that Amazon breached its promise of "Prime Exclusive Savings for You" when it provided purported "savings" that did not conform to the FTC Guides (AC, ¶52) and its promise of providing substantial savings to Prime Members at its Early Access Sale by fictitiously increasing the price of the products just before the sale, and then falsely claiming they were being offered at a discount. (AC, ¶53) Plaintiff further alleges unfair and deceptive acts and practices, in violation of the consumer fraud statutes of Illinois (815 ILCS 505/2) and Washington (Rev. Code Wash. §19.86.020),[1] when Defendants (a) promise

---

[1] Amazon's terms of service incorporate Washington law. (AC, ¶78)

"Exclusive deals  A wide selection of savings" to Amazon Prime customers and (b) then sell goods to Prime customers at fictitious sale prices, using devices such as artificially inflated "strike through" and "list" prices  (AC, ¶64), use devices such as countdown timers in order to create a false sense of urgency which pressures consumers into purchasing a product immediately, or one they would not otherwise purchase at all (AC, ¶65), and by inflating the prices of merchandise prior to sales events, and then claiming the prices are more substantially discounted than they really are in comparison to recent prices.

### III. PLAINTIFF PROPERLY ALLEGES DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF THE ILLINOIS AND WASHINGTON CONSUMER FRAUD STATUTES

Amazon first contends that "with all of the information available to Plaintiff at the time of his purchase, any claim of deception is implausible." (Dkt. #27, p. 9)  Amazon relies on its "Strike-Through Pricing and Savings Policy available on its website." (Dkt. #27, p. 9)

Plaintiff alleges that Amazon's description of a "strike-through price" on its "Help & Customer Service" screen is not apparent to consumers, either when purchasing a product or when signing up for Amazon Prime. (AC, ¶¶38-41)

Disclaimers which are not prominent or contradict the overall message of an advertisement are not given effect. *In re Giant Food,* 61 F.T.C. 326, 1962 FTC LEXIS 84, *52-54, 74-76 (1962) (disclaimer purporting to explain meaning of list prices), aff'd, *Giant Food, Inc. v. FTC,* 322 F.2d 977, 986 (D.C.Cir. 1963) (small print disclaimers that contradict basic message of advertisement not given effect); *FTC v. QT, Inc.,* 448 F.Supp.2d 908, 924 and n. 15 (N.D. Ill. 2006).  Rather, qualifying language and disclaimers must be "sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression.  Anything less is only likely to cause confusion by creating contradictory double meanings." *Removatron Int'l Corp. v. FTC,* 884 F.2d 1489, 1497 (1st Cir. 1989); accord, *FTC v. U.S. Sales Corp.*, 785 F.Supp. 737, 751 (N.D. Ill. 1992); *Cristostomo v. New Balance Ath., Inc.*, 1:21cv12095, 2022 U.S. Dist. LEXIS 231039, at *24 (D. Mass. Dec. 23, 2022) ("New Balance cannot negate or limit a warranty with a contradictory disclaimer if, as

plaintiff has alleged, a reasonable consumer would not expect there to be small print qualifications that contradict its more prominent unqualified 'Made in the USA' marketing.").

When contracts are entered into via Internet, the website must draw a reasonable consumer's attention to disclaimers or other terms in order for those terms to be part of the contract. *Specht v Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002); *Sgouros v. TransUnion Corp.,* 817 F.3d 1029, 1034-35 (7th Cir. 2016). The mere existence of terms somewhere on a website is not sufficient to place consumers on inquiry or constructive notice of those terms. *Specht*, 306 F3d at 31-32. This is particularly true when the terms are on a page which does not obviously contain contract terms, such as a "Help & Customer Service" screen. *Specht*, 306 F.3d at 31. There is no presumption that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Sgouros*, 817 F.3d at 1035.

Moreover, the meaning conveyed by Amazon's statements is one of fact, to be decided by a jury. *Bell v. Publix Super Mkts., Inc.,* 982 F.3d 468, 481 (7th Cir. 2020); *Sgouros, supra,* 817 F.3d at 1034-35. Since *Kalwajtys v. FTC*, 237 F.2d 654, 656 (7th Cir. 1956), the Seventh Circuit has held that "[t]he meaning of advertisements or other representations to the public, and their tendency or capacity to mislead or deceive, are questions of fact . . . ." A trial by jury has been requested in this matter.[2]

Amazon inappropriately cites inapposite cases where information was readily available, not hidden on a website. In *Tudor v. Jewel Food Stores*, 288 Ill.App.3d 207, 681 N.E.2d 6 (1st Dist. 1997), any discrepancy between the price listed on the shelf and the price loaded into defendants' checkout computer was ascertainable from a receipt. In *Killeen v. McDonald's Corp.,* 317 F.Supp.3d 1012 (N.D. Ill. 2018), the fact that certain "value meals" were more expensive than their component items sold

---

[2] An ICFA claim is triable by jury in federal court. *Goldberg v. 401 N. Wabash Venture LLC,* 09cv6455, 2013 U.S. Dist. LEXIS 32858, at *21 (N.D. Ill. Mar. 11, 2013); *Inter-Asset Finanz AG v. Refco, Inc.,* 92cv7833, 1993 U.S. Dist. LEXIS 11181, *8-9, 1993 WL 311772 (N.D. Ill. Aug. 11, 1993).

separately was apparent from comparing prices on menu boards prominently displayed at the point of sale.

Amazon's argument is not well-founded or a basis for 12(b)(6) dismissal.

## IV. PLAINTIFF ALLEGES DAMAGES

Amazon cites several cases in which sellers advertised to the general public – without prior agreements with particular consumers – that their goods were available at a bargain price, when they are not. Consumers who visited the sellers purchased goods and were later disappointed to learn that they had not gotten the bargains represented. *Mulligan v. QVC, Inc.,* 382 Ill.App.3d 620, 888 N.E.2d 1190, 1197 (1st Dist. 2008); *Kim v. Carter's Inc.,* 598 F.3d 362 (7th Cir. 2010); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014); see also, *Benson v. Fannie Mae Confections Brands, Inc.,* 944 F.3d 639 (7th Cir. 2019), involving allegations of "slack fill" in candy boxes. The courts held that the fact that plaintiff's "expectations for the discount he received were unrealized when he learned that the sale was not a temporary price reduction, but rather the normal retail price of JAB's merchandise" (*Camasta,* 761 F.3d at 735) did not amount to actual damages unless "the merchandise was defective or worth less than what they actually paid," or the deception prevented plaintiff from "shopp[ing] around and f[inding] a better price in the marketplace." (*Camasta*, 761 F.3d at 740, citing *Kim,* 598 F.3d at 365).

The first part of this analysis is obviously inapposite where, as here, the consumer pays money to Amazon to receive offers of what is reasonably understood to be a genuine substantial price reduction from Amazon's own price, and does not get what he pays for. (AC, ¶30) The money paid to Amazon by consumers for access to genuine bargains constitutes direct, out of pocket loss. *FTC v. Trudeau*, 579 F.3d 754, 770-73 (7th Cir. 2009), on remand 708 F.Supp.2d 711 (N.D.Ill. 2010) (restitution ordered where defendant sold information and used misrepresentation to induce sales); *FTC v. US Sales Corp., supra,* 785 F. Supp. at 753 (restitution ordered where consumers were promised information about how to purchase repossessed and seized vehicles cheaply and what was provided did not conform), later proceeding, *United States v. Vlahos,* No. 95-1484, 1996 U.S. App.

LEXIS 20525 (7th Cir. Aug. 9, 1996); *FTC v. Vocational Guides, Inc.,* 3:01cv0170, 2006 U.S. Dist. LEXIS 82308, at *53 (M.D. Tenn. Nov. 9, 2006) (restitution ordered where defendants used misrepresentation to sell information about how to get government grants).

Moreover, Plaintiff alleges that the goods he was deceived into rushing to purchase from Amazon were available from Amazon and another seller for about $200 less shortly after his purchase. (AC, ¶46). This also constitutes damage under the cases cited by Amazon.

## V. PLAINTIFF COMPLIES WITH RULE 9(b)

Amazon alleges (Dkt. #27, pp. 12-13) that Plaintiff has failed to comply with Fed.R.Civ.P. 9(b). However, Plaintiff does allege who made the misrepresentation, the time place and content of the misrepresentation, and how it was communicated to Plaintiff. (*Camasta,* 761 F.3d at 737) (AC, ¶¶11-18, 20-29) Indeed, Amazon recites the misrepresentations at Dkt. #27, pp. 2-3.

Rule 9(b) does not "require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false" (*Camasta,* 761 F.3d at 737), although Plaintiff does this as well. (AC, ¶¶30-36)

Amazon cites *Camasta* for the proposition that allegations "nearly identical" to Plaintiff's about historical sale prices were insufficient. (Dkt. #27, p. 13) However, the plaintiff in *Camasta* alleged neither the precise representations made by the defendant nor how defendant's actual pricing practice were inconsistent with those representations. Instead, he sought to infer that pricing practices in New York some five years previously represented current practices in Illinois.

Here, Plaintiff alleges what Amazon represented (AC, ¶¶13-16), what the representations mean to reasonable consumers (AC, ¶¶19-22), and that Amazon's actual prices did not conform to such meaning. The price information relates to the same product and the time frame at issue. Indeed, the "Strike Through Pricing and Savings" page admits that Amazon is using a definition of "savings" inconsistent with the meaning conveyed by its representations. Nothing more is required.

Moreover, a plaintiff "is not required to prove [his] case in [his] complaint, even in the post-*Twombly* and *Iqbal* environment: the Federal Rules still follow a notice-pleading regime, and they

-10-

do not 'impose a probability requirement on the plaintiffs.'" *Motorola. Inc. v. Lemko Corp.*, 08cv5427, 2010 U.S. Dist. LEXIS 25778, 2010 WL 960348, at *3 (N.D. Ill. Mar. 15, 2010), quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). Rather, a plaintiff need only provide sufficient plausible facts to put the defendant on notice of his claims. *Brooks,* 578 F.3d at 581. "Even after *Twombly,* courts must still approach motions under Rule 12(b)(6) by 'constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.' " *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2008). "A plaintiff need not prove her case in the complaint," but merely show facts "beyond simple conjecture that the plaintiff is entitled to relief." *Wilson v. AT&T Inc.*, 1:09cv58, 2010 U.S. Dist. LEXIS 23412, 2010 WL 987737 at *1 (S.D. Ind. Mar. 12, 2010). "[T]he changes that *Twombly* and its progeny have brought to the standard of review for Rule 12 motions have not changed the liberal notice pleading standard of the federal rules." *Wilson*, 2010 WL 987737 at *5.

## VI. PLAINTIFF ALLEGES BREACH OF CONTRACT

Amazon seeks dismissal of Plaintiff's breach of contract claim by repeating its arguments that (a) Plaintiff does not allege damages and (b) that the pricing Plaintiff received conformed to Amazon's representations. The first argument is specious, as discussed above. The second argument assumes that Amazon's representations include the qualifications on its "Strike Through Pricing and Savings" page, which they do not. If, as Plaintiff contends, Amazon's representations convey to the consumer that the prices offered as "bargains" are lower than those at which a substantial number of sales of the article were made by it, Amazon did not provide what it represented.

Amazon also contends that the FTC Guides Against Deceptive Pricing are not part of the contract. (Dkt. #27, p. 14 n. 7) However, Plaintiff alleges (AC, ¶¶21-22) that most business adhere to them, creating an expectation that representations of savings, bargains, discounts and price reductions will conform to the FTC rules, whether the consumers know of the FTC rules or not. A contract has that meaning which Amazon's representations would convey to a reasonable consumer.

-11-

*Viking Bank v. Firgrove Commons 3, LLC,* 183 Wash. App. 706, 712-13, 334 P.3d 116, 120 (2014) ("Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent."); *Alexander & Alexander v. Wohlman*, 19 Wash. App. 670, 681, 578 P.2d 530, 536-37 (1978) ("It follows that the test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."); *Carey v. Richards Bldg. Supply Co.,* 367 Ill. App. 3d 724, 728, 856 N.E.2d 24, 28 (2d Dist. 2006) ("a contract must be construed, relying on objective criteria, in accordance with the ordinary expectations of reasonable people"); *Robbins v. Lynch,* 836 F.2d 330, 332 (7th Cir. 1988) ("A signatory to a contract is bound by its ordinary meaning even if he gave it an idiosyncratic one; private intent counts only if it is conveyed to the other party and shared."). Standard form contracts are "to be interpreted whenever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." *Canel v. Fed. Home Loan Mortg. Corp.*, 85cv1424, 1985 U.S. Dist. LEXIS 15442, at *8 (N.D. Ill. Sep. 30, 1985). If a reasonable consumer would understand Amazon's statements to have the meaning set forth in the FTC Guides, that meaning is part of the contract.

Plaintiff alleges a valid claim for breach of contract.

## VII. CONCLUSION

For the reasons stated, Amazon's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Cassandra P. Miller (ARDC 6290238)
Carly M. Roman (ARDC 6334371)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500

Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\39609\Plaintiff's Response to MTD Amended Compl - revised_.wpd

## CERTIFICATE OF SERVICE

      Daniel A. Edelman certifies that on August 31, 2023, this document was filed by ECF, causing copies to be sent to all counsel of record.

                                          */s/ Daniel A. Edelman*
                                          Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Cassandra P. Miller (ARDC 6290238)
Carly M. Roman (ARDC 6334371)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com